## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 15-23750-CIV-MARTINEZ/GOODMAN

JASON JAMES, et al.,

      Plaintiffs,

v.

YAMAHA MOTOR CORP., U.S.A.,

      Defendant.

_____/

### ORDER[1] CONCERNING MOTION TO DISMISS
### FIRST AMENDED CLASS ACTION COMPLAINT

Is a product defective if it has never actually stopped working properly? Can a consumer successfully bring a claim for a defective product if the specific product purchased has not yet experienced a failure? Has a product manufacturer fully honored a warranty to repair a product if the repair requires the product to be returned again and again for servicing? These are the core questions generated in Defendant's motion to dismiss.

---

[1] This order was originally uploaded on CM/ECF as a report and recommendations [ECF No. 44]. However, because the parties consented [ECF No. 11-2] to magistrate judge jurisdiction for motions to dismiss (among other motions) and District Judge Jose E. Martinez referred [ECF No. 15] these motions to the Undersigned, the previously-uploaded report and recommendations [ECF No. 44] is hereby vacated and replaced with this order. In addition to changing the operative language from "report and recommendation" to "order," a change was also made to the second sentence of the third paragraph on page 24 in this order.

Plaintiffs Jason James and Roli Garcia ("Plaintiffs") each purchased two outboard engines from official dealers. **Neither of them has experienced any actual operational problems with the subject motors**. Nevertheless, their First Amended Complaint ("FAC") alleges that the engines are defective because they are subject to a recall notice concerning premature failure and excessive wear -- a scenario which requires them (and all other owners of covered engines) to constantly bring in their engines for repairs every time they operate the engines for 80 hours of use within a specified RPM range. They allege that this creates a risk of catastrophic damage, significant inconvenience and a loss of market value because the marketplace recognizes that the engines are defective.

The legal issue raised in the motion to dismiss filed by Defendant Yamaha Motor Corporation, U.S.A. ("Yamaha") is whether Plaintiffs (whose engines have not actually failed to run or experienced operational difficulty) have adequately alleged claims for (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, (2) breach of express warranty, (3) breach of the implied warranty of merchantability, (4) unjust enrichment (in the alternative), and (5) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq.

To a certain extent, the answer to this question depends on how the issue and factual scenario are framed.

According to Yamaha's dismissal motion [ECF No. 37], Plaintiffs' chief theory is that products "must be beyond perfect." It contends that the engines have not manifested a legally required actual defect, and it seeks to neutralize Plaintiffs' "concern" over the flywheel and damper ring on their motors by noting that they have "never experienced" a problem with their boat motors and emphasizing that Yamaha will "replace those parts at no expense to Plaintiffs for the life of the motors" in case Plaintiffs "ever do experience an issue with the flywheel or damper ring." Yamaha argues that Plaintiffs' theory would "not only require manufacturers to produce products that are completely free of any problems, it also would discourage companies from providing assistance to customers."

Plaintiffs, on the other hand, stress that "the motors will have to be returned repeatedly for additional service and replacement of the flywheels because the defect cannot be fixed." [ECF NO. 33, P. 2]. They also point out that Yamaha engaged in deceptive conduct "by intentionally failing to disclose material information about the motors' propensity for premature failure and excessive wear and by covering up the defect with false and misleading recall notices that duped plaintiffs into believing they were receiving an 'upgrade' (rather than a  replacement flywheel just as defective as its predecessor."  [ECF No. 38, p. 5].

Although they dispute Yamaha's legal argument that Florida law requires "manifestation" of the defect, Plaintiffs say that this legal squabble is entirely academic

now at the dismissal/pleadings stage because they have, in fact, alleged that the defect manifested itself. And they argue that Yamaha's presentation about providing free lifetime repairs should not be considered now as a matter of basic civil procedure because the point is not discussed anywhere in the FAC and Yamaha simply announces this factor as unsupported rhetoric in its opposition memorandum.

The parties have extensively briefed the motion and the Undersigned also held a lengthy hearing.

For the reasons outlined in greater detail below, the Undersigned **denies** the motion in large part and **grants** it in small part. As explained below, however, the FAC is hardly a problem-free submission, and Plaintiffs must confront the reality that they have not experienced actual engine failures yet. Therefore, they may encounter substantial challenges on some (and perhaps most and maybe even all) of the counts at later stages in this case. For purposes of a motion to dismiss, however, the FAC has, for now, alleged a sufficiently plausible theory to permit Plaintiffs to proceed on all but one of their claims. Count III, for implied warranty, cannot proceed because there is no privity between Plaintiffs and Yamaha.

A portion of this order is based on procedural grounds -- i.e., it would be improper (or at least imprudent) for the Undersigned to consider fact-based arguments proffered by Yamaha when they are not in the FAC. This reluctance to consider a fact-based argument now will disappear at later stages of the case, such as a summary

4

judgment motion, of course. Other portions are bottomed on the rule that well-pled allegations must be accepted (even though there may well be grounds to believe that Plaintiffs might encounter significant difficulty in proving certain critical allegations and theories).

The Undersigned **denies** Yamaha's motion to dismiss as to Counts I, II, IV and V, but grants it (albeit without prejudice) for Count III (implied warranty).

## Procedural Background

Plaintiffs own four of the allegedly defective outboard motors. They initially filed a four-count Complaint against Yamaha alleging claims for violation of the MMWA (Count I), breach of express warranty (Count II), breach of the implied warranty of merchantability (Count III), and Unjust Enrichment (in the alternative, in Count IV). [ECF No. 1]. Yamaha filed a motion to dismiss [ECF Nos. 12; 13], Plaintiffs filed an opposition response [ECF No. 17], and Yamaha filed a reply [ECF No. 22]. The Undersigned held a multi-hour hearing [ECF No. 30] and directed the parties to file additional memoranda on the policy arguments underlying their positions [ECF Nos. 31; 32]. The parties each filed an additional, policy-oriented memorandum. [ECF Nos. 33; 34].

The Undersigned then issued an Order denying without prejudice the motion to dismiss. [ECF No. 35]. In the Order, I specifically noted that the Order did not contain any substantive rulings on whether the four claims were legally deficient or whether

they stated causes of action. Instead, the Order was specifically designed to facilitate the filing of an amended complaint (a procedural step that Plaintiffs said they wanted to pursue in order to add a fifth count) and to streamline further briefing.

The Order permitted Yamaha to adopt arguments raised in its initial motion to dismiss and to supplement them with new or more-nuanced arguments, should it file a motion to dismiss the amended complaint. It also permitted the same approach for Plaintiffs' response to a renewed dismissal motion and it prohibited a reply absent further order. Plaintiffs filed their First Amended Complaint, adding a fifth count under FDUTPA [ECF No. 36], Yamaha filed its dismissal motion [ECF No. 37], and Plaintiffs filed their response [ECF No. 38].

The motion is now ripe for an order.

## The FAC's Allegations

The FAC asserts the following allegations, which the Court accepts for purposes of evaluating a motion to dismiss:

In February 2014, James purchased two Yamaha outboard motors, sold as "demos" by an official Yamaha dealer. Garcia purchased two Yamaha outboard motors as new from an official Yamaha dealer in December 2012. Yamaha expressly warranted that the motors would be "free from defects in material and workmanship" for the entire warranty period. In addition, Yamaha made affirmations of fact or promises that the motors would be fully operational, safe and reliable. These representations were

made in advertisements, in Yamaha's e-brochures and in uniform statements provided by Yamaha to be made by salespeople.

James and Garcia bring the lawsuit as a nationwide class action on behalf of all persons or entities in the United States who own Yamaha F350UCA and/or LF350UCA outboard motors, which have been subject to three Yamaha Technical Bulletins sent by Yamaha to its authorized dealers between 2009 and 2015.

Among other things, the technical bulletins state explicitly that the motors are subject to "premature failure" and are "susceptible to excessive wear" at certain speeds. Plaintiffs, who were not aware of the bulletins at the time they purchased the engines, have now attached them to the FAC.

The Yamaha motors are also subject to a May 2015 recall notice sent to registered owners. This notice informed owners that they should return the motors to the dealer for replacement of the flywheel and an "upgrade" to the motors. Plaintiffs attached a copy of a sample notice to the FAC.

Despite the "upgrade" mentioned in the notice, the motors at issue have material latent defects and are susceptible to premature wear and destruction, rendering them dangerous, unseaworthy and not merchantable.

The notice Yamaha sent to registered owners was misleading. It mentioned an "upgrade" and advised that its purpose was to "inform you of an important upgrade we've recently made available to maximize the quality of and long-term durability you

expect from Yamaha." The notice mentions that the flywheel will be replaced but says nothing about "premature failure" or "excessive wear."

The motors are two of four Yamaha models vulnerable to premature failure at 80 hours of normal, ordinary and intended use in a specified RPM range. The range includes all typical cruising speeds for the motors, which means the motors will often be operated in the danger range. In addition to the risk of catastrophic damage to the motors and the inconvenience of having to seek repairs after every 80 hours of use in the specified range, the defect has caused a loss of market value in the motors and boats they are attached to because the outboard motor marketplace recognizes that the motors are defective.

Yamaha has known since at least 2009 that the flywheel on the defective motors has a tendency to fail, break loose and detach from the motor assembly during normal and expected use. Yamaha continues to manufacture and sell the defective motors, however. Moreover, Yamaha has imposed on purchasers the risk of owning and operating the defective motors, the burden of monitoring the hours on the defective flywheels, the disruption to their ordinary use of their boats (and motors) and the immediate loss of thousands of dollars of each class member's net worth, due to the lost value of the motors.

As part of a misleading effort to engage in a slight of hand, Yamaha did not offer to refund the purchase price or allow purchasers or owners to return the defective

motors. Instead, Yamaha forced the owners to live with the defective motors by imposing the onerous protocol described above. Complying with the recall notice and 80-hour return protocol is a complex task requiring substantial time and expense -- because the motors must be returned to the dealer at the owner's expense. Marina operators charge a substantial fee to lift a 30-foot boat out of the water, and the costs of transporting boats to the dealer can cost hundreds of dollars if the owner does not own his own trailer.

In compliance with Yamaha's May 2015 recall notice, James brought his motors to the dealer in September 2015, and Garcia did so in August 2015.

Plaintiffs are concerned about the safety of their motors and their boats, as well as the safety of their families and guests while aboard their boats. In addition, they believe that the value of their boats and motors is at least 50% less than the value would be but for the defects. The motors themselves have little or no resale value because any boat equipped with a defective motor is unwanted in the resale market.

Plaintiffs and the Class seek to return the motors to Yamaha by revoking their acceptance and seeking damages, including a full refund of the purchase price. Alternatively, they seek damages based on the difference in value at the time of purchase between a conforming motor, free of material defect, and the latent, materially defective motors sold to them and the Class.

**Yamaha's Opposition (in general)**

Stressing that Plaintiffs have not personally experienced any mechanical difficulties with the four engines they purchased, Yamaha describes the lawsuit as one based on a mere concern that fully functioning motors are at risk of premature failure at some point in the future. Yamaha contends there is no breach of warranty because the engines have performed as warranted and that claims alleging diminished value or safety concerns are not actionable without an allegation that the alleged defect has **manifested** within the warranty term. Yamaha notes that Plaintiffs also fail to allege that they ever had to present the motors for actual repairs and fail to allege that Yamaha ever refused to make a repair.

Yamaha contends that Florida law does not require a product manufacturer or distributor to produce a defect-free product and that there is no actionable claim for breach of warranty (or otherwise) absent an allegation that the dealer or manufacturer refused to repair or remedy motor failures.

It says there is no law supporting the notion that a warranty has been breached when a customer receives a preventive replacement part at no expense to the customer.

Yamaha contends that Plaintiffs lack standing because the alleged defect in their specific engines has not manifested and the so-called injury is only hypothetical at this point -- a scenario which means Plaintiffs have not met the injury-in-fact requirement.

In addition, Yamaha emphasizes that it has extended the terms of the express warranty to cover any repair required to remedy the alleged defect which Plaintiffs say they fear might be experienced in the future. Thus, Yamaha says that any damages claim is not only speculative, but also meritless.

Yamaha describes the lawsuit as one based only on "the frustrated expectation that the flywheel should not need to be replaced." And it notes that it "never promised that the flywheel would never need replacement" and likewise never promised that "the motor would never have to be brought in for maintenance." [ECF No. 34, p. 2]. Therefore, Yamaha says, Plaintiffs have not identified any portion of the warranty which has not been honored and have not adequately explained how Yamaha failed to abide by it limited warranty.

Consequently, Yamaha describes the lawsuit as nothing more than a gripe over having to take motors to the dealership to have them serviced. It says the inconvenience and loss of use of the boats during the brief periods when the engines are being serviced for free are not breaches of any type of warranty, express or implied. And it says that loss in value does not generate a claim either.

Yamaha argues that Plaintiffs' theory would discourage companies from providing assistance to customers because they would be confronted with liability claims, rather than being lauded for standing by its products and providing free

replacement parts. It also touts the fact that it has gone beyond its obligation under the warranty by voluntarily electing to replace the flywheels for life, at no cost to Plaintiffs.

Yamaha further argues that Plaintiffs' theory would create a novel and expansive theory of injury, and would lead to scenarios where consumers could revoke their acceptances and seek damages, including a full purchase price refund, any time a product experienced a problem -- even if the manufacturer offered to fix the problem for free.

Yamaha disagrees that the warranty work is a recall, but points out that even a bona fide recall is insufficient to prove the existence of a defect, which it says is necessary for all claims asserted, including the new FDUTPA claim. Similarly, Yamaha argues the Plaintiffs are impermissibly attempting to recast a warranty claim into a FDUTPA claim.

Yamaha contends that actual damages under FDUTPA do not include diminution in value damages.

And Yamaha argues that causation is lacking because of a 2009 letter which purportedly put Plaintiffs on notice of the problem.

It also contends there is a lack of privity between the two purchasers and Yamaha, which it says is fatal to the two types of warranty claims.

12

**Plaintiffs' Response (in general)**

Plaintiffs note that the FAC says nothing about "free lifetime repairs" and urge the Court to ignore this argument at the motion to dismiss stage.

They contend that Yamaha "unilaterally imposed its own brand of substitute performance and, through slight [sic] of hand marketing, told its customers they were getting a free 'upgrade.'" [ECF No. 33, p. 2]. According to Plaintiffs, "[n]o public policy would be served by allowing such improper conduct." [*Id.*].

Plaintiffs challenge the argument that there can be no warranty or FDUTPA claim unless the product has a manifest defect. They point to case law authority, contrary to the authority relied upon by Yamaha, to support their position. Moreover, they say the FAC *does* sufficiently allege a manifest defect that cannot be resolved against it on a Rule 12(b)(6) motion.

Plaintiffs agree that a breach of warranty is not always a FDUTPA violation, but they say it can be if it results from unfair or deceptive conduct. Not surprisingly, Plaintiffs contend that the FAC sufficiently alleges Yamaha's unfair and deceptive conduct.

Plaintiffs contest the lack-of-causation theory, arguing that the 2009 recall letter raises a factual argument which should not be addressed in a motion to dismiss forum. Moreover, they note that this letter was sent to other, prior purchasers, not to these two specific plaintiffs.

Plaintiffs also challenge Yamaha's legal argument that diminution in value damages is not recoverable under FDUTPA or warranty claims, pointing to recent cases they say support the claim.

Plaintiffs contend that Yamaha did not in fact repair or replace the defective motors because it never truly fixed the problem; it requires purchasers to repeatedly **return** the motors to the dealers for replacement of one flywheel with another defective one. This, Plaintiffs say, is inadequate because the replacement of a defective part with an equally defective part is a meaningless remedy, thus creating a breach of warranty.

Finally, Plaintiffs dispute the privity argument, primarily on legal grounds.

## Applicable Legal Principles and Analysis

### Motion to Dismiss Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary in order to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face.**'" *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Moreover, when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. (internal quotations omitted) (alteration in original).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (inner quotations omitted). Although, as noted, a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Yamaha's dismissal motion is expressly based on Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1).[2] Although Yamaha argues that Plaintiffs lack standing

---

[2]     The Order allowed the parties to rely on their prior submissions when addressing the arguments focused on the new FDUTPA claim in the FAC. [ECF No. 35, p. 4]. Thus, Yamaha's arguments are found in its initial motion to dismiss, the

because it says they have not met the injury-in-fact requirement and note that standing is fundamental to a federal court's subject matter jurisdiction, its motion (or motions) and memoranda mention only 12(b)(6), which concerns a "failure to state a claim upon which relief can be granted." The submissions do not invoke 12(b)(1), which addresses a purported "lack of subject-matter jurisdiction."

These two types of motions are treated "quite differently" when matter outside the complaint is used to support the challenge. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). The distinction between factual 12(b)(1) motions and factual 12(b)(6) motions "is rooted in the unique nature of the jurisdictional question." *Id.* at 413. A district court evaluating a factual subject matter challenge in a 12(b)(1) context "is not limited to an inquiry into undisputed facts" because it "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Id*. But a district court assessing a 12(b)(6) motion does not have that leeway.

As noted, Yamaha raised only 12(b)(6) as a basis for dismissal. However, its motion also included a standing argument, which, by its very nature, is a challenge to subject matter jurisdiction. In its motion and memoranda, Yamaha mentions its offer to provide free lifetime repairs for the mechanical issues addressed in its recall notice and technical announcement. The Undersigned must therefore decide whether it is

---

memorandum supporting the motion to dismiss, its reply, its post-hearing supplemental memorandum, and the motion to dismiss the new FDUTPA claim. [ECF Nos. 12; 13; 22; 34; 37].

appropriate to consider this argument now, in a hybrid-type motion which expressly mentions only 12(b)(6), but which argues subject matter jurisdiction, thus arguably raising an implicit 12(b)(1) subject matter jurisdiction challenge.

In an abundance of caution, the Undersigned believes that the ambiguity described above would be best addressed through a prudent, careful approach -- which means the additional argument would not be considered now.

Moreover, from a practical perspective, this additional fact-based argument is unlikely to carry the day for Yamaha now anyway because Plaintiffs contend that they have at least *alleged* the necessary injury. Yamaha's purported, beyond-the-face-of-the-FAC argument that it has offered lifetime repairs does not change Plaintiffs' theory that the continual need to bring in the engines for repairs, even if provided for free, renders the engines defective. And it does not undermine Plaintiffs' argument that the engines cannot, for all practical purposes, be sold because the market views them as defective.

Thus, the Undersigned will not factor in Yamaha's claim to have offered lifetime repairs to the assessment of the dismissal motion. Yamaha may, of course, raise the issue again later, such as in a summary judgment motion. *See also Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (district court could not have considered motion under 12(b)(6) because court relied "on extrinsic evidence outside the pleadings"); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) ('Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby

converted into a Rule 56 Summary Judgment motion"). *See generally Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (because a facial challenge to subject matter jurisdiction is based solely on the allegations in the complaint, the court must, as with a 12(b)(6) motion, take the complaint's allegations as true and may not consider extrinsic evidence). *Cf. Lawrence v. Dunbar,* 919 F.2d 1525 (11th Cir. 1990) (vacating and remanding order dismissing lawsuit for lack of subject matter jurisdiction because of issues of material fact generated by permissible conflicting factual inferences concerning the issue of whether defendant was acting within the scope of his duties).

Rather than address Plaintiffs' claims in the specific order in which they are alleged in the FAC, the Undersigned will address the *counts* in the order raised by Yamaha in its dismissal motions.  That approach is logical, especially because the claims under the MMWA (in Count I) necessarily involve an assessment of the express warranty claim (in Count II).

<u>Count II: Express Warranty</u>

The FAC alleges that Yamaha expressly warranted that the motors would be "free from defects in material and workmanship" for three years from the date of purchase. In addition, Plaintiffs allege that Yamaha made additional affirmations of fact and promises in advertisements, e-brochures and uniform statements made by salespeople.

Plaintiffs allege that Yamaha breached these express warranties by selling motors not "free from defects in material and workmanship" and not fully operational, safe or reliable on delivery. They also allege a further breach by failure to provide safe replacement motors free of material defect and by failing to repair the motors in a commercially reasonable manner. They said Yamaha "merely replaced each defective flywheel with another, equally defective flywheel."

Yamaha contends that Plaintiffs have not stated a claim because Florida law requires a defect which has manifested itself. It cites *Kia Motors America Corporation v. Butler,* 985 So.2d 1133, 1139 (Fla. 3d DCA 2008) and its progeny, as well as similar cases from other jurisdictions[3] for the rule that a plaintiff must allege that he actually experienced the purported defect at issue.  In *Kia Motors,* a trial court entered an order approving the prosecution of a "premature wear" class action. The central claim was that the vehicles sold in the years in question contained a break system design defect which caused the premature wear of the front brakes. The appellate court explained that one (of many) reasons why the case could not proceed as a class action was that the class representative (Ms. Butler) sought compensation not only for class members whose brakes had manifested a deficiency, but also for those whose breaks performed satisfactorily. In its supporting memorandum, Yamaha noted that the *Kia Motors* Court relied on *Bridgestone/Firestone* and its analysis of a "risk of failure" and "diminished

---

[3]    *See, e.g., Bussian v. DaimlerChrysler Corp.,* 411 F. Supp. 2d 614, 630 (N.D. N.C. 2006); *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1016-17 (7th Cir. 2002).

vehicle resale value" theory for tires that never failed: "If tort law fully compensates those who are physically injured, then any recovery by those whose products function properly means excess compensation." *Bridgestone/Firestone,* 288 F.3d at 1017.

Yamaha also asserts policy arguments for its "manifestation of defect" argument: it says many Yamaha outboard owners will never experience the defect, but, if they do, their outboard motors will be repaired without any expense to them, under the warranty. Therefore, Yamaha argues, any fear that Plaintiffs may have about a defect they might experience in the future is both speculative and meritless.

Plaintiffs contend that Yamaha is wrong on the law because Florida law does not have a manifestation requirement. In support, they cite, among other authorities, *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 535 (S.D. Fla. 2015), where the district court denied a dismissal motion and certified a class for breach of express warranty, implied warranty and FDUTPA where the plaintiff alleged her Ford Explorer had a defective exhaust system allowing fumes to enter the passenger compartment. The Court there rejected Ford's contention that only class members who had "experienced, noticed and reported" the defect could recover because "if a jury believes Plaintiff's evidence, it could find that the alleged defect was manifested when the Explorer came off the assembly line, regardless of whether every putative class member has driven the vehicle in such a way that caused exhaust to enter the passenger cabin." *Id*. Plaintiffs stress that *Sanchez-Knutson* cited *Kia Motors*, but instead relied on and

quoted *Keegan v. Am. Honda Motor Company, Inc.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012), a tire defect case which certified a class even though "some vehicles have not yet manifested premature or excessive tire wear."

The cases cited by each side do, in fact, say what the parties say they say. But the Undersigned need not now determine as a matter of law whether Florida law requires that a defect be manifested in order for a plaintiff to pursue a breach of warranty claim -- because Plaintiffs have in fact alleged that they experienced the defect.

To be sure, their motors have not yet broken down and they have not caused Plaintiffs to be stranded on the water in their boats. But Plaintiffs allege that they experienced the defect because they had to present their motors for repair and they will have to do so again, repeatedly, during the life of the engines. In other words, the so-called repair is not an adequate repair because the engines will need to be returned again and again for repair after additional usage, for the same problem. For purposes of a motion to dismiss, this is a sufficient allegation of a plaintiff who has "experienced the defect" and who alleges a loss of value.

Unlike the cases cited by Yamaha,[4] the possibility of future injury is not merely hypothetical. To the contrary, according to the FAC's allegations, the possibility of

---

[4]     Many of the cases cited by Yamaha, including *Kia Motors* and *Bridgestone/Firestone*, were not decided on motions to dismiss but, rather, were decided after discovery, on class certification or summary judgment motions. In addition, the alleged facts are significantly different. In *Bridgestone/Firestone,* for example, the purchasers were not required to bring in their tires every 5,000 or 10,000 miles (to select

future injury is a virtual *certainty*, as the engines will have to be repaired again and again. *See generally Q+Food LLC v. Mitsubishi Fuso Truck of Am., Inc.* No. 14-6046, 2015 WL 4603678 (D.N.J. July 30, 2015) (applying Florida law) (denying motion to dismiss breach of express warranty claim where plaintiff had to repeatedly bring vehicle in for service).[5] *See also Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 686 (S.D. Fla. 2009) (distinguishing *Kia Motors* and certifying a class where expert testimony showed that the "defect [which allegedly de-activated the airbag in a specific Lexus model] is likely to have occurred in a large number of [subject vehicles]").

There is a significant difference between a plaintiff who has never encountered a defect in a specific product and who may *never* confront a defect and the plaintiffs here, who *will* (according to the FAC's allegations which we must accept) repeatedly need to return the engines for repair and servicing and suffer a loss in value. Yamaha might be able to later demonstrate that this is insufficient for an express warranty claim, but Plaintiffs' theories are plausible enough at the motion to dismiss stage. Significantly, Yamaha has not called the Court's attention to a case, whether binding or not, where the trial court dismissed a claim involving a product that was subject to recall and technical

---

a hypothetical scenario where mandatory service/repair visits were necessary to fix the defect).

[5]    Although the manufacturer ultimately advised that no further assistance would be provided, the Court noted that Plaintiff had to bring in the truck for repair on at least 13 separate occasions and on at least one occasion the authorized dealer could not even diagnose the problem.

bulletins and was required to be returned for servicing to repair the problem noted in the recall notice and technical bulletins.

In effect, Yamaha wants this Court to accept the notion that it has adequately fixed the problem with a promise to conduct additional servicing requiring engine owners to bring in their heavy motors for the repairs. But is this a sufficient repair?  For purposes of ruling on a motion to dismiss, the Undersigned concludes that Yamaha's theory does not sufficiently negate the alternate view that Plaintiff's countervailing theory -- the "fix" is not a fix -- is plausible.

Yamaha also contends that the express warranty claim must be dismissed because Plaintiffs failed to allege **privity**. It notes that Plaintiffs purchased the motors at issue from third-party marine dealers who are not named parties in this case. And it submits a substantial body of non-binding federal cases. *See e.g., Witt v. Howmedica Osteonics Corp.,* No. 13-cv-20742, 2013 WL 6858395 (S.D. Fla. Dec. 30, 2013) (noting that some Florida courts distinguish the privity requirements for express and implied warranties but finding privity required for both types of warranty claims).

On the other hand, other Florida federal courts have held that Florida law does not generally require privity for **express** warranty consumer claims. *Smith v. Wm. Wrigley Jr. Co.,* 663 F. Supp. 2d 1336 (S.D. Fla. 2009). Perhaps most significantly for purposes of this order, United States District Judge Jose E. Martinez, the Article III judge who will preside over the trial in this very ca5se, has followed the rule that

24

Florida law does not automatically bar express warranty claims where there is a lack of privity. *Mardegan v. Mylan, Inc.*, No. 10-14285-CIV, 2011 WL 3583743 (S.D. Fla. Aug. 12, 2011). Other Florida district courts have followed Judge Martinez's view that Florida law does not require privity for express warranty claims. *See Bohlke v. Shearer's Foods, LLC,* No. 9:14-CV-80727, 2015 WL 249418, at *11 (S.D. Fla. Jan. 20, 2015) (noting that the issue under Florida law "is not clear cut" but agreeing that the breach of express warranty claim survives despite the absence of privity).[6] *Cf., Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013) (Altonaga, J.) ("Florida courts have relaxed the privity requirement where the express warranty was intended to benefit subsequent owners").

Given the state of the law (which is uncertain, uneven and in flux) and Judge Martinez's prior decision, the Undersigned rejects Yamaha's argument that Florida law requires privity for an express warranty claim.

<u>Count III: Implied Warranty</u>

Plaintiffs seek relief under an implied warranty of merchantability theory but Florida law bars such claims if there is no privity. *Mesa v. BMW of N. America, LLC,* 904 So.2d 450, 458 (Fla. 3d DCA 2005); *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006); *Speier-Roache v. Volkswagen Grp. of America, Inc.*, No. 14-20107, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014); *Ocana v. Ford Motor Co.*, 992 So.2d 319 (Fla. 3d DCA

---

[6]     United States District Judge Robin Rosenberg decided *Bohlke* shortly before she was elevated to the Eleventh Circuit Court of Appeals.

2008). Even the cases permitting breach of express warranty claims in the absence of privity to go forward in the face of a dismissal motion note that privity is required for *implied* warranty claims -- including Judge Martinez's opinion in *Mardegan,* 2011 WL 3583743, at *6, where he clearly explained that "it is clear that under Florida law a plaintiff may not recover on a breach of implied warranty claim absent privity of contract."

Recognizing this rule, Plaintiffs argue that there is an exception to the rule requiring privity for implied warranty claims when plaintiffs are third-party beneficiaries. They cite *Sanchez-Knutson v. Ford Motor Co.,* 52 F. Supp. 3d 1223, 1232-34 (S.D. Fla. 2014), for authority to support this exception. The problem with this argument, however, is that the FAC does not contain any allegations that Plaintiffs are third-party beneficiaries of an implied warranty. Thus, the Undersigned grants Yamaha's motion to dismiss the implied warranty count without prejudice, with leave to amend.

### Count I: MMWA Federal Statutory Claim

Plaintiffs allege that (1) they are consumers under the Act, (2) the defective motors are "consumer products," (3) Yamaha expressly warranted that the motors would be "free from defects in material and workmanship" for the entire warranty period, (4) the express warranties are written warranties under MMWA, (5) Yamaha breached its express warranties by selling motors having with defects and which were

not fully operational, safe or reliable, (6) Yamaha further breached by failing to provide safe replacement motors or providing commercially reasonable repair by "merely replac[ing] each defective flywheel with another, equally defective flywheel."

For all practical purposes, Yamaha's arguments here mirror their now-unsuccessful arguments on the express warranty and implied warranty claims. *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) (disposition of state law warranty claims determines disposition of MMWA claim, which means that an MMWA claim based on implied warranty fails when the implied warranty claim fails under state warranty law). Because the Undersigned has for now not accepted as sufficient for dismissal purposes the argument that Plaintiffs have not adequately alleged that the defect manifested itself, the challenge to the MMWA count is also rejected for present purposes.[7]

Plaintiffs' MMWA count is premised only on a breach of express warranty. Thus, the Court need not consider whether there can be an MMWA claim bottomed on an implied warranty claim in Florida absent privity and absent a third-party beneficiary theory allegation.

---

[7]    Given this conclusion, the Undersigned need not wrestle with Plaintiffs' argument that the MMWA provides consumers with broader express warranty rights which do not require privity.

## Count IV: Unjust Enrichment

The FAC notes that it pleads the unjust enrichment count "in the alternative should Plaintiffs' statutory claims fail or be dismissed." The claim is that Plaintiffs and other Class members conferred upon Yamaha, "through dealers and/or agents," payment for the motors. These payments, Plaintiffs allege, were non-gratuitous benefits which Yamaha retained even though it allegedly knew of the defects. Therefore, Plaintiffs contend, it would be unjust for Yamaha to retain the payments, which should therefore be returned through restitution.

The parties do not dispute that unjust enrichment is generally available only where there is no adequate remedy at law. *Matthews v. Am. Honda Motor Co., Inc.*, No. 12-60630, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012). Plaintiffs recognize this, but correctly note that some courts often allow plaintiffs to allege an unjust enrichment count in the alternative, in case the other claims fail. *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (permitting unjust enrichment count even though it also asserted a breach of contract count). So, it is premature to require Plaintiffs to elect their remedy and select either an unjust enrichment claim or similar claims, such as breach of warranty.

Yamaha asserted another challenge to the unjust enrichment count: the claim is deficient and unavailable because the benefit (i.e., the payments made to purchase the engines) was not *directly* conferred on Yamaha, as the payments were made to third-

party dealers. While this point is accurate and Plaintiffs do not dispute it, Plaintiffs point to legal authority permitting unjust enrichment claims where the benefit passes through an intermediary before being conferred on a defendant. *Hamilton v. SunTrust Mortg.*, 6 F. Supp. 3d 1312, 1317 (S.D. Fla. 2014). *See also Aceto Corp. v. TherapeuticsMD, Inc.,* 953 F.Supp.2d 1269, 1288 (S.D. Fla. 2013); *Williams v. Wells Fargo Bank N.A.,* No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) (to hold otherwise "would be to undermine the equitable purpose of unjust enrichment claims"); *MacMorris v. Wyeth, Inc.,* No. 2:04CV596FTM-29DNF, 2005 WL 1528626, at *4 (M.D. Fla. June 27, 2005) (denying motion to dismiss unjust enrichment claim brought in a wrongful death case against a prescription drug manufacturer because "indirect purchasers have been allowed to bring an unjust enrichment claim against a manufacturer").

The Undersigned finds the cases cited above by Plaintiffs to be persuasive, and therefore rejects the argument that Plaintiffs cannot state an unjust enrichment claim merely because their purchase payments went first to dealers, with some of the money being passed through indirectly to Yamaha, the manufacturer). The Undersigned denies Yamaha's motion to dismiss this count.

## Count V: FDUTPA

Plaintiffs assert a FDUTPA claim against Yamaha, alleging a violation caused by a failure to fully and properly disclose information about the defective engines, aggravated by the alleged deception perpetrated by the misleading notice about an

"upgrade." Plaintiffs note that Yamaha provided further information about the defect -- but only in a notice sent to servicers (i.e., not to purchasers and consumers). Plaintiffs say they overpaid for their motors and did not receive the benefit of their bargain. Consequently, they allege, their motors and boats have lost value.

Yamaha's dismissal motion asserts three challenges to the FDUTPA count: (1) Plaintiffs purportedly failed to allege the manifestation of a defect, (2) causation is lacking because it openly advised customers of the flywheel replacement, long before Plaintiffs purchased their engines in 2012 and 2014, and (3) actual damages required under FDUTPA do not include diminution in value damages.

The Undersigned already ruled upon Yamaha's first argument when I ordered (above) rejection of the similar argument asserted in response to the express warranty claim. Thus, even if Florida law requires that the product have a manifest defect for a FDUTPA claim (a position Plaintiffs vigorously contest), the FAC alleges a manifest defect. Yamaha, of course, disagrees with the notion that requiring consumers to repeatedly return the engines for repair every 80 hours and causing engine owners and boat owners to suffer a diminution in value renders the engines defective, but the Undersigned has already found that theory unpersuasive at the dismissal stage. So there is no need to rehash the analysis; the Undersigned rejects this similar argument as applied to FDUTPA.

Concerning Yamaha's causation argument, the Undersigned agrees with Plaintiffs' response that this is a fact-based argument which is inappropriate in a Rule 12(b)(6) analysis. Moreover, even if I were to consider the 2009 letter, it does not support a ruling dismissing the FDUTPA claim because there is no conclusive proof that the letter went to *these* purchasers, as opposed to prior purchasers. Indeed, it appears highly unlikely that a 2014 purchaser would have seen a letter sent in 2009. Yamaha does not allege that its 2009 letter was publicly distributed, such as in television announcements or newspaper stories, so it is difficult to discern how Mr. James and Mr. Garcia would have known about the information in the letters before they made their purchases.

In addition, the letters would not undermine a causation allegation at the motion to dismiss stage even if these two purchasers had seen the letter because the letter does not expressly mention a defect or problem.  To the contrary, it discusses an "upgrade," which is information that Plaintiffs describe as *hiding* material facts. According to Plaintiffs, the 2009 letter "would have only lulled plaintiffs into believing that any problem with this type of motor had been resolved."

It may well be that Yamaha can establish that the letter was objectively sufficient to adequately advise Plaintiffs of the engines' status, thus precluding Plaintiffs from proving that the alleged practice was likely to deceive. But given Plaintiffs' allegations to the contrary, the FAC is sufficient to withstand a motion to dismiss. *Cf. Casey v. Fla.*

*Coastal School of Law, Inc.,* No. 3:14-cv-1229, 2015 WL 10096084 (N.D. Fla. Aug. 11, 2015) (magistrate judge recommended dismissal with prejudice of FDUTPA claim brought by seven graduates against law school because, *inter alia,* plaintiffs never alleged that the law school ever affirmatively and wrongfully stated that the employment rate was based on a limited subset of lucrative jobs and because interpretation urged by plaintiffs would have been unreasonable).[8]

Concerning Yamaha's argument that diminution in value damages cannot constitute actual damages for a FDUTPA claim, Florida cases construing the statute find

---

[8]   Specifically, the magistrate judge noted that Plaintiffs' FDUTPA theory would require that the prospective law student believe "there was an almost unlimited supply of those jobs for nearly all graduates of a law school 'placing in the bottom 5 percent of accredited law schools based on grade point averages and LSAT scores,' . . . including during times of economic instability."). The magistrate judge found this interpretation, which formed the basis of the claim that the law school engaged in deceptive conduct, to be "unreasonable" and "reasonably avoidable." These unique and comparatively extreme facts are not the type of factual scenario at issue in the FAC, of course, and the Undersigned does not find the Northern District of Florida case to be persuasive for the specific facts alleged in the instant case.

The District Court supplemented and then adopted the Report and Recommendations. 2015 WL 10818746 (September 28, 2015). In doing so, the Court noted that the Plaintiffs were college graduates and a "sophisticated subset of education consumers, capable of sifting through data and weighing alternatives." Therefore, the Court explained, the law school's low admission standards and low ranking "would have been a red flag" and caused the sophisticated law students to "seek out more nuanced information to allow for a meaningful comparison of law schools." Because this inquiry was "reasonably expected" and "could have prevented the alleged injuries," the District Court held that Plaintiffs "failed to state a plausible claim" for "probable deception." *Id.,* at *3. The Undersigned has not been presented with any similar scenario in the instant case, and I therefore cannot conclude at the dismissal stage that James and Garcia have not plausibly alleged a FDUTPA claim for deceptive behavior.

that this theory is in fact the standard for determining actual damages under FDUTPA. *Rollins v. Butland,* 951 So.2d 860, 869-70 (Fla. 2d DCA 2006) (measure of actual damages is difference in market value in condition delivered and market value in condition in which it should have been delivered). *See also Rollins, Inc. v. Heller,* 454 So.2d 580, 585 (Fla. 3d DCA 1984) (difference in market value of alarm system, not value of items stolen during burglary). *Cf. Carriuolo v. General Motors LLC,* 72 F. Supp. 3d 1323, 1325-26 (S.D. Fla. 2014) (denying motion to dismiss complaint based on alleged misrepresentations on car stickers providing inaccurate crash safety ratings and noting that the allegation that automobiles were "less valuable" was sufficient to state a FDUTPA claim).[9] *See also Collins v. DaimlerChrysler Corp.,* 894 So.2d 988 (Fla. 5th DCA 2004) (reversing order dismissing lawsuit for sale of vehicle with allegedly defective and dangerous seatbelt buckles and holding that complaint sufficiently alleged a loss compensable under FDUTPA because "Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim").[10]

---

[9]     The Eleventh Circuit Court of Appeals recently affirmed the class certification decision in this FDUTPA case. *Carriuolo v. General Motors LLC,* --- F. 3d ---, 2016 WL 2870025 (11th Cir. May 17, 2016). Plaintiffs filed it here as supplemental authority. [ECF No. 42-1]. The Eleventh Circuit explained that "the FDUTPA 'benefit of the bargain' model provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial." *Carriuolo,* 2016 WL 2870025, at *5.

[10]     The Eleventh Circuit recently cited *Collins v. DaimlerChrysler Corp.* with approval in affirming the class certification order in *Carriuolo.* 2016 WL 2870025, at *5. In doing so, the appellate court noted that plaintiffs "may show that a vehicle presented with three perfect safety ratings is more valuable than a vehicle presented with no safety ratings."

<u>Article III Standing</u>

Yamaha also argues that Plaintiffs lack Article III standing because they supposedly have not met the injury-in-fact requirement. This standing argument is based on the same theory which Yamaha advanced in its attack against many of the other counts -- that the only injury is a mere concern that the motors are "susceptible to premature failure" even though "no such failure has [yet] occurred." [ECF No. 13, p. 13]. Phrased differently, Yamaha contends that Plaintiffs have "only presented a hypothetical 'injury' that has yet to manifest or occur."

Plaintiffs do not rebut the legal point that a plaintiff must have the requisite standing to proceed. They simply say that they have that standing.

Standing requires only a "minimal showing of injury." *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008) (explaining that standing has been upheld when the alleged injury was "prospective and probabilistic in nature"). Because Plaintiffs have alleged monetary harm (i.e., diminution in value), inconvenience, and loss of their boats (when the engines have to be brought in for the ongoing service every 80 hours), they have sufficiently established standing. *See generally Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) (plaintiffs satisfied standing requirement of concrete injury in fact when they suffered economic loss

---

The same analysis applies here, where Plaintiffs contend that Yamaha engines without the flywheel problems (and the need to repeatedly bring in the motors for repairs) are worth more than the ones they bought, which they allege cannot be sold in the market.

arising from an injury of the "difference between what they contracted for and what they actually received" and rejecting defense argument that plaintiffs lacked standing because the airbags in their vehicles never inadvertently deployed and that the injury was therefore speculative).

<u>**Conclusion**</u>

The Undersigned denies Yamaha's motion to dismiss Counts I, II, IV and V, but grants it without prejudice on Count III, with leave to file a second amended complaint within 10 days.

**DONE AND ORDERED,** in Chambers, in Miami, Florida, May 31, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to:**</u>
The Honorable Jose E. Martinez
All Counsel of Record